UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MICHAEL K.**[1]

    **Plaintiff,**

  v.

    Case No. 3:20-cv-0317
    Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael K. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 14, *Defendant's Memorandum in Opposition*, ECF No. 15, *Plaintiff's Reply*, ECF No.16, and the *Certified Administrative Record*, ECF No. 11. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

**I.      PROCEDURAL HISTORY**

On March 15, 2017, Plaintiff protectively filed his current application for benefits, alleging that he has been disabled since January 23, 2017, due to a number of physical and mental impairments. *See* R. 200-204.[3] The application was denied initially and upon reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge. R. 116-18. Administrative Law Judge ("ALJ") Laura Roberts held a hearing on March 12, 2019, at which Plaintiff, who was represented by counsel, testified, as did Plaintiff's mother and a vocational expert. R. 40-65. In a decision dated May 9, 2019, the ALJ concluded that Plaintiff has not been under a disability since his application date. R. 12-32. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 3, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 18. The matter is ripe for disposition.

**II.     LEGAL STANDARD**

**A.      Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages in the Certified Administrative Record will be cited, using the pagination in the Certified Administrative Record, as "R. __."

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4)."The claimant bears the burden of proof through step four; at step five, the burden

shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

4

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 26 years old on his application date. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 14.

At step two, the ALJ found that Plaintiff's seizure disorder and borderline intellectual functioning were severe impairments. *Id*. The ALJ also found that degenerative disc disease of the cervical spine, migraine headaches, and history of substance abuse were not severe impairments. R. 15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 16.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> No climbing ropes, ladders, or scaffolds. No work involving any exposure to unprotected heights; dangerous moving machinery; commercial driving, extreme hot temperatures; open bodies of water; open flames; sharp objects (such as knives or blades). Understand, remember, and carry out simple tasks with simple instructions in a routine work setting. No production rate work or strict production quotas. Few, if any, changes in work processes and work routines. Occasional interaction with coworkers, supervisors, and the general public. No reading required to perform job duties. Any changes in work processes will be explained in advance.

R. 20. The ALJ also found that Plaintiff had no past relevant work. R. 31.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a laundry laborer, sorter, and—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 32. The ALJ

therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since March 15, 2017, the application date. R. 32.

Plaintiff disagrees with that decision, arguing that the ALJ erred in evaluating the opinions of Cassandra Milling, M.D., Plaintiff's treating neurologist, and in failing to find that Plaintiff's impairments meet or equal Listings 12.05B and 11.02. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 14, *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 15.

IV. **RELEVANT EVIDENCE AND DISCUSSION**

Among Plaintiff's challenges to the ALJ's decision is Plaintiff's complaint that the ALJ erred in evaluating the opinions of Dr. Milling, Plaintiff's treating neurologist. Because the Court concludes that that challenge is meritorious, the Court will limit its review and discussion to that issue.

Under the regulations applicable to claims like Plaintiff's, filed before March 27, 2017, the opinions of a treating provider must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2), (4). The Commissioner must provide "good reasons" for discounting the opinions of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinions and the reasons for that weight. *Gayheart*

6

*v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

Dr. Milling has treated Plaintiff's tonic-clonic seizures since September 2014. R. 1471. In February 2019, Dr. Milling completed a questionnaire, R. 1471-74, in which she indicated that Plaintiff's dyscognitive seizure episodes occur almost daily, "nearly 3-5/week," up to two times per day. R. 1471. Dr. Milling has personally observed such episodes. R. 1472. Although Plaintiff had not adhered to prescribed treatment, Dr. Milling stated that her patient's symptoms had persisted for at least four months despite that fact. *Id.* Symptoms last for about one hour. R. 1473. According to Dr. Milling, Plaintiff's seizure condition results in a moderate limitation in his ability to understand, remember, or apply information, in his ability to concentrate, persist, or maintain pace, and in his ability adapt or manage himself. R. 1472-73. The condition results in a mild limitation in Plaintiff's ability to interact with others, and no limitation in his physical functioning. R. 1472. Dr. Milling also opined that Plaintiff's seizure condition would cause him to be absent from work more than three times per month, and that either his seizure condition or "baseline cognitive impairment" would cause him to be distracted 2/3 of an eight hour workday. R. 1473-74.

The ALJ considered Dr. Milling's opinions. R. 28. Specifically, the ALJ found that Dr. Milling "provided good support for her medical opinion reflected from within her objective treatment notes." *Id.* However, the ALJ declined to accord controlling weight to all of Dr. Milling's opinions because they are "*not fully consistent* with other substantial evidence in the case record." *Id*. (emphasis added).

The ALJ's evaluation of Dr. Milling's opinions failed to conform to the governing regulation, which requires that the opinions of a treating provider be given controlling weight so long as they are not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). As the Commissioner has explained, the term "not inconsistent" requires an entirely different standard of evaluation than was accorded by the ALJ to Dr. Milling's opinion:

> Not inconsistent. This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., *it does not have to be consistent with all the other evidence*) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.

SSR 2-p, 1996 WL 374188, *3 (emphasis added). *But see M*[.] *v. Comm'r of Soc. Sec.*, Case No. 1:19-cv-0017, 2020 WL 1545552, *4 (W.D. Mich. April 1, 2020) (holding, without expressly addressing the issue, that the ALJ articulated good reasons for assigning reduced weight to the treating physician's opinions despite the ALJ's finding that the opinions were "not fully consistent with, or supported by" other medical evidence).

The Acting Commissioner appears to argue that the ALJ in fact complied with the applicable regulation:

> Here, the ALJ cited to several pieces of substantial evidence that were inconsistent with Dr. Milling's limitations, including inconsistencies with her own treatment notes and seizure precautions. The ALJ did not require Dr. Milling's opinion to be consistent with all evidence, but that there were no inconsistencies with other substantial evidence.

*Defendant's Memorandum in Opposition*, ECF No. 15, PageID# 1554-55. This characterization of the ALJ's findings and conclusions mis-states those findings and conclusions. The ALJ expressly found that Dr. Milling's opinions enjoyed "good support . . . reflected from within her objective treatment notes." R. 28. Moreover, as noted above, the ALJ expressly based her

8

evaluation of Dr. Milling's opinions on the fact that the opinions were not "*fully consistent with*" other substantial evidence. *Id.* (emphasis added). Clearly, the ALJ's decision in this regard failed to conform to the Commissioner's regulation governing the evaluation of the opinions of treating medical sources.

A decision of the Commissioner cannot be upheld where the ALJ failed to follow the Commissioner's own regulations if that error prejudices a claimant on the merits or deprives the claimant of a substantial right. *Rabbers,* 582 F.3d at 651; *Bowen,* 478 F.3d at 746. Although not articulated in those terms, the Acting Commissioner appears to argue that the ALJ's failure to evaluate Dr. Milling's opinions in accordance with the proper standard was harmless because the ALJ found that the doctor's opinions "were inconsistent with the state agency consultants' opinions." *Defendant's Memorandum in Opposition*, ECF No. 15, PageID# 1555. It is true that an ALJ's error in failing to properly evaluate a medical source opinion can be viewed as harmless "if the ALJ adopted the opinion or made findings consistent with that opinion." *Beery v. Comm'r of Soc. Sec.*, 819 F. Appx. 405, 408 (6th Cir. 2020) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). Of course, in this case, the ALJ neither adopted Dr. Milling's opinion nor made findings consistent with all her opinions. Under these circumstances, this Court cannot agree that the ALJ's failure to properly evaluate Dr. Milling's opinions was harmless.

Because the Court finds that the ALJ evaluated the treating provider's opinions by reference to an improper standard, the Court concludes that the matter must be remanded to the Commissioner for further consideration.[4]

---

[4] Although the Court neither addresses nor resolves Plaintiff's other challenges, the Court suggests that the Commissioner also consider those challenges on remand.

V.      **CONCLUSION**

**WHEREUPON** the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  October 28, 2022                             *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE